372

Judy A. SMITH, Plaintiff-Appellant,

v.

GENERAL MOTORS CORPORATION,
Defendant-Appellee.

David FULKERSON, Edward Latham,
Jr., Johnny Perry,
Plaintiffs-Appellants,

Robert Wolfe, Intervening
Plaintiff-Appellant,

v.

INTERNATIONAL HARVESTER; International Union, United Automobile,
Aerospace and Agricultural Implement
Workers of America; Local 817 of the
International Union, United Automobile Aerospace and Agricultural Implement Workers of America, UAW, Defendants-Appellees.

Dennis J. McCONNELL,
Plaintiff-Appellant,

v.

RAINBO BAKING COMPANY; International Brotherhood of Teamsters,
Chauffeurs, Warehousemen and Helpers of America, Local 114, Defendants-Appellees.

Nos. 82–1822, 82–5676 and 83–3414.

United States Court of Appeals,
Sixth Circuit.

Argued April 9, 1984.

Decided Nov. 2, 1984.

Merritt, Circuit Judge, concurred specially and filed opinion.

Krupansky, Circuit Judge, dissented and filed opinion, in which Wellford, Circuit Judge, joined.

Wellford, Circuit Judge, dissented and filed opinion.

Michael L. Pitt (argued), Kelman, Loria, Downing, Schneider & Simpson, Detroit, Mich., for Smith.

Mark R. Flora (argued), Daniel Galant, Detroit, Mich., for General Motors Corp.

A. Campbell Ewen (argued), Ewen, Mac-Kenzie & Peden, Bill V. Seiller, Rice, Porter & Seiller, Louisville, Ky., for Fulkerson, Latham and Perry.

Herb Segal, Alphonso O'Neil-White, Louisville, Ky., M. Jay Whitman (argued), Detroit, Mich., Walter Lapp Sales, Louisville, Ky., for UAW and Local 817.

Galen J. White (argued), Edward Stopher, Louisville, Ky., for International Harvester.

Arthur M. Goldberg, Gen. Counsel, George Kirschenbaum, Assoc. Gen. Counsel, New York City, for amicus curiae AFL–CIO.

Daniel J. Picard (argued), Middletown, Ohio, for McConnell.

Michael W. Hawkins, Mark A. Vanderlaan, Michael Glassman (argued), Cincinnati, Ohio, Sorrell Logothetis (argued), Dayton, Ohio, for Rainbo Baking Co., et al.

Before LIVELY, Chief Judge; and EDWARDS, ENGEL, KEITH, MERRITT, KENNEDY, MARTIN, JONES, CONTIE, KRUPANSKY and WELLFORD, Circuit Judges.

BOYCE F. MARTIN, Jr., Circuit Judge.

The sole issue in these three cases is whether the decision in *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), establishing a six-month statute of limitations for hybrid, section 301/unfair representation claims, is to be given retroactive as well as prospective effect. A panel of this court heard oral arguments in *Smith v. General Motors* and *Fulkerson v. International Harvester* but did not issue opinions. Instead, the panel members moved for consideration en banc because of an apparent conflict in our cases dealing with this issue. That request was granted pursuant to Sixth Circuit Rule 14(a) and Fed.R.App.P. 35. The third case, *McConnell v. Rainbo Baking Co.*, was never submitted to a panel but rather was argued before the en banc court in the first instance.

**I.**

Judy Smith, appellant in No. 82–1822, was an employee at General Motor's AC Spark Plug Division in Flint, Michigan. On September 5, 1980, Smith was discharged because she allegedly reported for work under the influence of alcohol in violation of shop rules and her probationary employment agreement. Smith claims that she was not reporting to work but rather was returning to work after her shift had ended to recover the purse she left behind. She immediately filed a grievance over her discharge. However, on October 9, 1980, her union agreed with the employer to withdraw the grievance and change her discharge to a voluntary quit. On September 16, 1981, some eleven months later, Smith filed a complaint in Wayne County, Michigan, Circuit Court charging her employer with violation of her probationary employment agreement.[1] The case was subsequently removed. On October 5, 1982, the district judge dismissed Smith's complaint, holding that our intervening decision in *Badon v. General Motors Corp.*, 679 F.2d 93 (6th Cir.1982), which established a six-month statute of limitations for these claims, should be applied retroactively.[2]

1. The law in effect at the time her case was filed allowed her three years from the time of injury to file her complaint. *See, e.g. Echols v. Chrysler Corp.*, 633 F.2d 722 (6th Cir.1980).

2. In a subsequent case, this court held that *Badon* should *not* be given retroactive effect. *See Pitts v. Frito-Lay, Inc.*, 700 F.2d 330 (6th Cir. 1983). This decision, however, is no longer

David Fulkerson, Edward Latham, Jr., Johnny Perry, and Robert Wolfe, appellants in No. 82–5676, were employees at International Harvester's Louisville, Kentucky plant. On August 6, 1979, all four were discharged for their participation in an illegal wildcat strike. The union filed grievances on behalf of each employee but to no avail. After the union declined to take the grievances to arbitration, the discharges were declared final on September 30, 1980. Some fifteen months later, all but Wolfe filed a complaint alleging breach of the collective bargaining agreement by their employer and unfair representation by their union.[3] On September 30, 1982, Wolfe was allowed to intervene. On October 8, 1982, the district judge, in light of *Badon*, dismissed their complaint as untimely filed.[4]

Dennis McConnell, appellant in No. 83–3414, was an employee at Rainbo Baking Company's plant in Franklin, Ohio. On July 23, 1982, McConnell was fired for failing to report to work as scheduled and for failing to call in to explain his absence. Later that day, McConnell asked his Teamsters local to intervene in his behalf. The union told him they could do nothing for him. On January 19, 1983, almost six months later, McConnell filed this proceeding in the district court against both his union and his employer. On May 6, 1983, his complaint was dismissed because it was barred by Ohio's three-month statute of limitations for actions to vacate arbitration awards.[5]

## II.

In *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), the Supreme Court, in an effort to untangle a very confused area of the law, elected to dispense with its normal practice of borrowing analogous state statutes of limitations for federal statutes lacking their own and adopted a uniform, six-month statute of limitations for hybrid section 301/unfair representation claims. The issue raised in each of these three cases is whether the holding of *DelCostello* should be applied to cases already filed but not finally decided before the decision in *DelCostello*.

Opinion on this issue in the other circuits is fairly uniform. The First, Second, Third, Fourth, Fifth, Seventh, Eighth and Eleventh Circuits have all held that *DelCostello* should be given retroactive effect. *See Graves v. Smith's Transfer Corp.,* 736 F.2d 819 (1st Cir.1984); *Welyczko v. U.S. Air, Inc.,* 733 F.2d 239 (2d Cir.1984); *Perez v. Dana Corp.,* 718 F.2d 581 (3d Cir.1983); *Murray v. Branch Motor Express Co.,* 723 F.2d 1146 (4th Cir.1983); *Edwards v. Sea-Land Service, Inc.,* 720 F.2d 857 (5th Cir. 1983); *Storck v. International Brotherhood of Teamsters,* 712 F.2d 1194 (7th Cir. 1983); *Lincoln v. District 9,* 723 F.2d 627 (8th Cir.1983); *Hand v. International Chemical Workers Union,* 712 F.2d 1350 (11th Cir.1983).[6] Only the Ninth Circuit

---

dispositive because of the intervening Supreme Court decision in *DelCostello* establishing a uniform, six-month statute of limitations for all hybrid, section 301/unfair representation claims.

3. The law in effect at the time this case was filed apparently allowed the appellants five years from the time their discharges became final to bring their complaints.. *See, e.g., Gray v. Int'l Ass'n of Heat & Frost Insulators,* 416 F.2d 313 (6th Cir.1969).

4. *See supra* n. 2.

5. In *United Parcel Service, Inc. v. Mitchell,* 451 U.S. 56, 101 S.Ct. 1559, 67 L.Ed.2d 732 (1981), the Supreme Court decided that state statutes of limitations for vacating arbitration awards were

the appropriate statutes to use for determining the timeliness of an employee's section 301 claim against an employer for violation of the collective bargaining agreement. In *Lawson v. Truck Drivers,* 698 F.2d 250 (6th Cir.1983), decided two days *before* McConnell filed his complaint, we extended this rule to unfair representation claims brought against unions in Ohio.

6. Lest we paint with too broad a brush, we should note that the decisions in *Perez v. Dana Corp.* and *Edwards v. Sea-Land* were limited to the facts of their particular cases. The courts appear to have proceeded with caution because of their reading of the third prong of the *Chevron Oil Co. v. Huson* test for retroactivity, namely "the inequity imposed by retroactive application." 404 U.S. 97, 107, 92 S.Ct. 349, 355, 30 L.Ed.2d 296 (1971). The courts examined the

has found that *DelCostello* should not be applied retrospectively. *See Barina v. Gulf Trading & Transportation Co.,* 726 F.2d 560 (9th Cir.1984); *Edwards v. Teamsters Local No. 36,* 719 F.2d 1036 (9th Cir.1983), *cert. denied,* — U.S. —, 104 S.Ct. 1599, 80 L.Ed.2d 130 (1984). The prior opinion in this circuit appears ·to be divided. In *Pitts v. Frito-Lay, Inc.,* 700 F.2d 330 (6th Cir.1983), a case decided before *DelCostello,* this court declined to give retrospective effect to *Badon v. General Motors Corp.,* 679 F.2d 93 (6th Cir.1982), an earlier opinion of this court which essentially presaged the holding in *DelCostello.* In *Curtis v. Int'l Brotherhood of Teamsters,* 716 F.2d 360 (6th Cir.1983), we recognized that *DelCostello* was retroactively applicable. Nevertheless, this statement was dictum.[7]

### III.

■ The traditional method for determining the retroactivity of a decision in a civil case is to undertake the ·three-part analysis called for by *Chevron Oil Co. v. Huson,* 404 U.S. 97, 106–07, 92 S.Ct. 349, 355–56, 30 L.Ed.2d 296 (1971): (1) does the decision represent a "clear break" with past law; (2) would retroactive application further or retard operation of the new rule; and (3) could retroactive application "produce substantial inequitable results." In *Chevron* itself, the Supreme Court declined to give retroactive effect to a new rule changing the statute of limitations in certain admiralty actions.

■ Nevertheless, we agree with the Second Circuit that use of the *Chevron* analysis is not appropriate here because the Supreme Court implicitly held in *DelCostello* that the statute of limitations should be applied retroactively by barring the claim that was in front of the Court. *See Welyczko,* 733 F.2d at 241. If the Supreme Court had not intended for *DelCostello* to apply retroactively, the Court easily could have reserved the issue or could have applied the statute of limitations prospectively, as it did in *Chevron.* By applying the statute of limitations to extinguish the claim in the case before the Court, we feel the Supreme Court demonstrated its intent to apply *DelCostello* retroactively. Accordingly, we hold that the six-month statute of limitations for hybrid, section 301/unfair representation claims is. applicable to all cases pending at the time *DelCostello* was decided.

### IV.

■ In No. 82–1822, appellant Smith filed her complaint eleven months after her cause of action accrued. Thus it would appear that her complaint is barred by our decision today. However, Smith argues in her brief that the union never told her that her grievance had been dismissed and her discharge changed to a voluntary quit. She argues that this conduct by the union was sufficient to toll the running of the statute long enough to make her complaint timely. Accordingly, we remand her case

---

diligence with which the plaintiffs in each case acted to protect their rights and found them wanting. Presumably, litigants of greater diligence might manage to avoid being barred by *DelCostello.* We do not agree, however, that the equity inquiry called for in *Chevron* is to be made on a case-by-case basis. The prospect of a separate statute of limitations for every section 301 plaintiff with a case pending when *DelCostello* came down is unacceptable.

We also note that two of the other Circuits that have declared *DelCostello* retroactively applicable, the Seventh and the Eleventh, did so in cases where retroactivity *enhanced* rather than restricted employees' access to the courts. *See Storck v. Int'l Brotherhood of Teamsters,* 712 F.2d 1194 (7th Cir.1983); *Hand v. Int'l Chemical*

*Workers Union,* 712 F.2d 1350 (11th Cir.1983). In those cases, the district courts had dismissed the employees' complaints because not filed within the three-month limitations period called for by the Supreme Court's decision in *United Parcel Service v. Mitchell,* 451 U.S. 56, 101 S.Ct. 1559, 67 L.Ed.2d 732 (1981). Application of the six-month *DelCostello* period made their complaints timely. Perhaps these courts might reconsider their *DelCostello* holding when a new case restricting access comes along.

7. Ironically two of our unpublished opinions are more clearly in conflict. In *LaBond v. McLean Trucking Co.,* No. 82–1576 (6th Cir.1983), we found that *DelCostello* was *not* retroactive. In *Brain v. Roadway Express, Inc.,* No. 82–3078 (6th Cir. Sept. 23, 1983), we found that it was.

to the district court to determine if this claim has any merit.

■ As for appellants in No. 82–5676, their claim was filed fifteen months after their cause accrued. As they have alleged no conduct by defendants which would cause the statute to be tolled, their case is remanded to the district court with directions to dismiss.

■ Finally, in No. 83–3414, appellant McConnell filed his claim five months and twenty-seven days after his discharge. Under *DelCostello*, that is soon enough. Accordingly, the district court's decision to dismiss his complaint is reversed and the case remanded for further proceedings.

MERRITT, Circuit Judge, concurring.

I concur in the result reached by the Court which has the effect of applying *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983) retroactively, but I do not agree with its reasoning that the traditional analysis under *Chevron Oil v. Huson*, 404 U.S. 97, 106–07, 92 S.Ct. 349, 355–56, 30 L.Ed.2d 296 (1971) is unnecessary. The parties have briefed and argued the three cases under *Chevron*, and there is in fact a clear retroactivity issue presented by the cases.

Most Supreme Court decisions are given retroactive effect, but some are not. In *Chevron* itself the Supreme Court declined to give retroactive effect to an earlier decision and stated that the Court of Appeals opinion "reflects a misapprehension" of the question, 404 U.S. 109, 92 S.Ct. 356, a phrase it would not have used had it not expected the Court of Appeals to consider the issue. We should distinguish between retroactivity and nonretroactivity by the mode of analysis set out in *Chevron*, not by saying that we must apply their decisions retroactively until they tell us otherwise. We are not normally empowered to refuse to decide issues that are validly before us until after the Supreme Court has decided the issue. We are in the judiciary, not the army, and the Supreme Court does

not count cadence for us but rather counts on us to decide the issues which it reviews.

I do not agree that the Supreme Court decided the retroactivity issue in *DelCostello* itself by implication. The Court did not address, analyze or allude to the issue. How can the Court be held to have decided an issue it did not consider at all?

I have already analyzed for a panel of our Court the basic problem in this case under the *Chevron* standards, and I adhere to that analysis. *See Lawson v. Truck Drivers*, 698 F.2d 250 (6th Cir.1983).

KRUPANSKY, Circuit Judge, with whom Circuit Judge WELLFORD joins, dissenting.

For the reasons that the majority has abandoned the United States Supreme Court's pronouncements in *Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), for a simplistic rule of inequitable convenience I must respectfully dissent. Insofar as these appeals unfold against legal precepts carefully evolved over an extended period, a brief examination of the relevant case law is required to properly reflect the analytical logic supporting the retroactive application of *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983).

Section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185, which confers federal jurisdiction over controversy resulting from labor contracts, fails to articulate any time limitation within which an aggrieved party must initiate a § 301 complaint or be time barred. It has been long settled that, as to federally created causes of action, "the acts of limitations of the several states, where no special provision has been made by Congress, form a rule of decision in the courts of the United States". *McCluny v. Silliman*, 28 U.S. (3 Pet.) 270, 7 L.Ed. 676 (1850). Recognizing the rule of *McCluny v. Silliman* and its progeny, in *UAW v. Hoosier Cardinal Corp.*, 383 U.S. 696, 704–05, 86 S.Ct. 1107, 1113, 16 L.Ed.2d 192 (1966), the Supreme Court held the timeliness of a § 301 suit to

be determined by reference to an analogous state limitations period.

The plaintiff in *Hoosier,* however, did not seek to overturn an arbitrator's award, nor was it an employee § 301 action. It was in *United Parcel Service, Inc. v. Mitchell,* 451 U.S. 56, 101 S.Ct. 1559, 67 L.Ed.2d 732 (1981), that the Supreme Court first addressed the limitation enactments pertinent to so called hybrid § 301/fair representation claims, where an aggrieved employee initiated the action.[1] The *Mitchell* Court reasoned that such hybrid actions were "more analogous to an action to vacate an arbitration award than to a straight contract action", 451 U.S. at 63, 101 S.Ct. at 1564, because "an arbitration award stands between the employee and any relief which may be awarded against the company". *Id.* n. 4. *Mitchell* therefore mandated that the federal courts apply the state limitation statutes applicable to actions initiated by employees to vacate arbitration awards, which were (and remain) significantly shorter than other civil limitations periods. 451 U.S. at 61–63, 101 S.Ct. at 1563–64.

In *Badon v. General Motors Corp.,* 679 F.2d 93 (6th Cir.1982), this circuit evaluated the impact of *Mitchell* on § 301/fair representation actions arising pursuant to Michigan law. Previous to *Mitchell,* the Sixth Circuit had consistently maintained that Michigan's three-year tort limitations statute governed such Michigan litigation. *See, e.g., Echols v. Chrysler Corp.,* 633 F.2d 722 (6th Cir.1980); *Smart v. Ellis Trucking Co.,* 580 F.2d 215 (6th Cir.1978), *cert. denied,* 440 U.S. 958, 99 S.Ct. 1497, 59 L.Ed.2d 770 (1979). In *Badon,* however, this court recognized that *Mitchell* had obviated the earlier cases and, enunciated a rule favoring the state *arbitration* limitation statutes.

The *Badon* court, however, discovered that Michigan had specifically *excluded* labor disputes from its arbitration statute of limitations. As a result, *Badon* concluded that Michigan had elected to relegate the limitations period as applied to labor arbitration actions "to the realm of the common law". 679 F.2d at 99. Finding no guidance from the state common law, the court "on the strength of our own reasoning ... conclude[d] that the most appropriate statute of limitations" was the six-month period embodied in § 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b) (N.L.R.A.).

Subsequently, in *Lawson v. Truck Drivers, Chauffeurs, & Helpers,* 698 F.2d 250 (6th Cir.), *reh'g and reh'g en banc denied, cert. denied,* — U.S. —, 104 S.Ct. 69, 78 L.Ed.2d 83 (1983), a panel of this court decided that since *Mitchell* merely clarified the existing law by designating the appropriate class of state limitation rules to be applied by federal courts to § 301 employees' fair representation actions, *Mitchell's* rule would be retroactively applied.[2] *Law-*

---

**1.** A brief recap of the salient cases tracking the evolution of the employee's hybrid § 301 action provides direction to further analysis. In *Vaca v. Sipes,* 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967), the Supreme Court concluded that an aggrieved employee could bring an action against the employer, notwithstanding a contract proviso mandating certain grievance procedures, provided the employee could prove that the union breached its fair representation duty in its prosecution of the employee's grievance. Further, the Court held that it was irrelevant whether the employer and union were joined in one action. An employee was afforded flexibility to commence a § 301 action, under *Vaca v. Sipes,* if the exhaustion of the contractual grievance resolution procedures had been foreclosed by the union's *wrongful* refusal to process the grievance.

Subsequently, in *Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976), the Supreme Court held that the district judge had improperly dismissed the employees' § 301 suit against their employer. In that case, the grievance had been fully processed by the union to the final and binding arbitration level, where the arbitrator affirmed the discharges. The *Hines* complaint alleged that the union, which had control of the grievance prosecution, had defended the plaintiffs in bad faith, thereby depriving them of fair representation in the dispute resolution process. The Court directed that if the employees proved they were erroneously discharged *and,* that the union's breach of duty tainted the arbitration decision, then they would be entitled to a § 301 remedy.

**2.** The analysis and pertinent holding of the *Lawson* opinion are, of course, neither dispositive of nor relevant to the appeals at bar. *Lawson* pretermitted the *Chevron* analysis in concluding

*son* involved an Ohio dispute and required application of Ohio's ninety day arbitration limitation period. *In Pitts v. Frito-Lay, Inc.*, 700 F.2d 330 (6th Cir.1983), *reh'g and reh'g en banc denied*, this court addressed an issue unresolved by *Lawson* and *Badon*, namely whether to retroactively apply the *Badon* rule. *Pitts* evaluated the issue pursuant to the Supreme Court's teachings in *Chevron Oil Co. v. Huson, supra*, and concluded that the rule of *Badon* applying the federal N.L.R.A. limitations period constituted a significant departure from existing legal precedent so as to require only prospective utilization of the federal N.L.R.A. limitations period.

Subsequently, on June 8, 1983, the Supreme Court decided *DelCostello*. Therein the Court expressed dissatisfaction with its earlier *Mitchell* analogy of fair representation actions arising under *Vaca* and *Hines* fact situations, to state actions to vacate commercial arbitration awards:

> It has long been established that an individual employee may bring suit against his employer for breach of a collective bargaining agreement ... when the union representing the employee ... acts in such a discriminatory, dishonest, arbitrary, or perfunctory fashion as to breach its duty of fair representation .... Such a suit, as a formal matter, comprises two causes of action .... The suit is thus not a straight forward breach of contract suit under § 301 as was *Hoosier*, but a hybrid § 301/fair representation claim .... Also unlike the claim in *Hoosier*, it has no close analogy in ordinary state law. The analogies suggested in *Mitchell* both suffer from flaws, not only of legal substance, but more important, of practical application in view of the policies of federal labor law and the practicalities of hybrid § 301/fair representation litigation.
>
> In *Mitchell*, we analogized the employee's claim against the employer to an action to vacate an arbitration award in a commercial setting. We adhere to the view that, as between the two choices, it is more suitable to characterize the claim that way than as a suit for breach of contract. Nevertheless, the parallel is imperfect in operation. The main difference is that a party to commercial arbitration will ordinarily be represented by counsel or, at least, will have some experience in matters of commercial dealings and contract negotiation. Moreover, an action to vacate a commercial arbitral award will rarely raise any issues not already presented and contested in the arbitration proceeding itself. In the labor setting, by contrast, the employee will often be unsophisticated in collective-bargaining matters, and he will almost always be represented solely by the union. He is called upon, within the limitations period, to evaluate the adequacy of the union's representation, to retain counsel, to investigate substantial matters that were not at issue in the arbitration proceeding, and to frame his suit. Yet state arbitration statutes typically provide very short times in which to sue for vacation of arbitration awards. Concededly, the very brevity of New York's 90-day limitations period was a major factor why, in *Mitchell*, we preferred it to the six-year statute for breach of contract; but it does not follow that because six years is too long, 90 days is long enough. We conclude that *state limitations periods for vacating arbitration awards fail to provide an aggrieved employee with a satisfactory opportunity to vindicate his rights* under § 301 and the fair representation doctrine.

462 U.S. at 163–66, 103 S.Ct. at 2290–2291 [citations and footnotes deleted, emphasis added]. The Court also noted that only two states had arbitration limitations statutes longer than ninety days.

There is a striking similarity between the retroactivity issue this court resolved in *Pitts*, proceeding from *Badon's* invocation of the § 10(b) limitation, and the retroactiv-

---

that no clean break with precedent obtained in *Mitchell*. In contrast, *DelCostello* has rather dramatically compromised the settled and con- sistent case law in this circuit. Therefore, we are required to undertake a complete *Chevron* appraisal of the *DelCostello* decision.

ity issue presented in these *en banc* cases as a result of the Supreme Court's imposing the § 10(b) time limits in *DelCostello*. As in *Pitts*, the issue currently confronting this *en banc* disposition must be approached by invoking the retroactivity analysis dictated by *Chevron*. From *Chevron's* comprehensive colligation of the salient cases there emerged a tripart formula which is the mandated touchstone for the instant appeals:

First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed. Second ... "[we] weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." Finally, we ... weigh ( ) the inequity imposed by retroactive application, for "[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the 'injustice or hardship' by a holding of nonretroactivity."

404 U.S. at 106–07, 92 S.Ct. at 355 [citations omitted]. *Chevron* unequivocally orders *ad hoc* application and the adoption of

a uniform rule, perhaps justified under given circumstances, would constitute an open and intentional disregard of an unambiguous pronouncement of the Supreme Court when it emphatically directed "[we] weigh ... *each case*". *Id.* The majority has asiduously avoided the specific direction and the equitable considerations imposed by *Chevron* for a simplistic evasion of the *Chevron* rule.[3]

The first criteria announced by *Chevron*, namely, the "new principle of law" inquiry, mandates a comparative analysis of the effective law prior to and after *DelCostello*. Framed in relevant terminology, *Chevron* endorsed the view that, in the event there existed a clearly defined limitations period upon which the plaintiff-employee relied to file a timely complaint, which limitation period was discarded in favor of a new limitation period under which the complaint would be barred as untimely, an equitable balance would favor prospective application. *Cf. Hanover Shoe, Inc. v. United Shoe Machinery Corp.*, 392 U.S. 481, 496, 88 S.Ct. 2224, 2233, 20 L.Ed.2d 1231 (1968), *cited in Chevron Oil Co. v. Huson*, *supra*.

In *Perez v. Dana Corporation, Parish Frame Division*, 718 F.2d 581 (3d Cir. 1983), which has become a leading case on the issue of *DelCostello's* retroactive appli-

---

**3.** The majority opinion crafts a rule of convenience and avoidance with respect to the applicability of the *Chevron* analysis when it blithely refuses to address the retrospectivity of Supreme Court decisions. As a result, *Chevron, Hanover Shoe*, their predecessors and progeny, become irrelevant to this circuit's jurisprudence and, in the majority's apparent view, stand merely to represent the Supreme Court's conversation with itself. I would take the principles articulated in those thoughtful opinions more seriously and at their face values, and I would avoid adopting such deceptively simple rules of law as that espoused today.

While the majority's rule would ease the burden on this court by obviating an otherwise difficult analytical task, the rule's genesis has no legitimate source. In fact, in the case which precipitated *Chevron, Rodrigue v. Aetna Casualty and Surety Co.*, 395 U.S. 352, 89 S.Ct. 1835, 23 L.Ed.2d 360 (1969), the Supreme Court made no mention of the retroactive effect of the rule therein articulated and applied that rule to the

petitioners then before the Court. Subsequently, in *Chevron*, the Supreme Court confronted the retroactivity issue and constructed the *Chevron* formula. Had the Court desired the rule embraced by the majority in this case, the difficult, thorough, and thoughtful analysis undertaken by the *Chevron* Court would have been unnecessary. Nowhere in *Chevron* does the Court indicate that the tests thereon announced were fabricated only for the benefit of the Supreme Court.

My objection to the majority's position is engendered by more than the fact that it contradicts and ignores the historical manner in which retroactivity issues actually have been addressed by the Supreme Court (although that deficiency alone is sufficient cause for dissent); I also object because the majority, in effect, has instructed the Supreme Court on what issues it must address in resolving a case. I can not join an appeals court decision which presumes to set forth a rule to be abided by a Supreme Court Justice in drafting an opinion.

cation, the Third Circuit had concluded that the relevant limitations period for *Vaca/Hines* litigation had been "erratically and inconsistently" applied. The Third Circuit therefore discerned no "clear past precedent", at the time of the action's accrual, upon which the Pennsylvania plaintiff in *Perez* could have relied in deferring, for nearly two years, the initiation of the lawsuit.[4]

Eleven months subsequent to the accrual of Perez's cause of action, Perez had still not filed the complaint when the Third Circuit issued *Liotta v. National Forge Co.*, 629 F.2d 903 (3d Cir.1980), *cert. denied*, 451 U.S. 970, 101 S.Ct. 2045, 68 L.Ed.2d 348 (1981), which adopted Pennsylvania's three month statute of limitations on actions to set aside arbitration awards for use in § 301/fair representation actions. Thereafter, the *Liotta* holding was supported by the Supreme Court's decision in *Mitchell*. Despite those developments, Perez waited until September 18, 1981 to initiate his lawsuit. That was twenty-three months after his injury allegedly occurred, fully one year after *Liotta*, and five months subsequent to *Mitchell*. The Third Circuit appropriately concluded that Perez had been "sleeping on his rights". 718 F.2d at 588. The *Perez* decision is easily distinguished from the within cases. Contrary to the factual circumstances of *Perez*, none of the plaintiffs in these *en banc* cases may be accused of sleeping on their rights in filing their complaints.

Plaintiffs-Appellants in Case No. 82–5676 allege that their cause of action accrued on September 30, 1980. They filed their complaint on December 22, 1981, fifteen months subsequent to the alleged onset of the *Vaca/Hines* injury. This case arose in Kentucky which, unlike most states, had not enacted a relevant limitation of actions statute. The trial court, on May 11, 1982, correctly applying the Sixth Circuit's ruling in *Gray v. International Association of Heat & Frost Insulators*, 416 F.2d 313 (6th Cir.1969), "borrowed" Kentucky's catch-all five-year statute of limitations, Ky.Rev. Stat. § 413.120(2), and ruled the complaints timely.

Two weeks later, this circuit issued *Badon* which held that where the forum state failed to provide a usable arbitration action limitations statute, the federal courts must apply the six month period of § 10(b). The district court thereupon entertained the defendants' motion for reconsideration, and dismissed the action as untimely *per* the rule of *Badon*.

Similarly, in Case No. 82–1822 the Michigan employee's cause of action accrued on October 9, 1980, at which time the state's three-year tort limitation of actions statute was firmly entrenched as the appropriate state period for hybrid § 310/fair representation actions in Michigan. The plaintiff therein filed her complaint on September 16, 1981, well within the applicable period. Nine months later, while the case remained at the trial level, *Badon* was issued. Because that decision was dispositive of Michigan cases, the lower court dismissed the complaint.

Thus, in the Michigan and Kentucky actions the plaintiff-employee relied upon the state limitations periods which this court had specifically directed as the appropriate state statute most analogous to their causes of action.[5] In *DelCostello*, the Supreme Court overruled the clear precedent under which these *Vaca/Hines* lawsuits had been timely filed, in favor of a drastically curtailed time limitation pursuant to which

---

4. Interestingly, it was only upon a review of the decisions of *other* courts of appeals that the Third Circuit in *Perez* concluded that there had been no clearly defined limitations period applicable to Perez's lawsuit. In the only pertinent Third Circuit case reviewed in *Perez*, the appeals court had specifically *approved* adoption of a six-year limitations period. *Falsetti v. Local Union*, 355 F.2d 658 (3d Cir.1966), *cited in Perez, supra*.

5. The third case under review by this *en banc* court, No. 83–3414, arose in Ohio, which has a ninety day statute of limitations governing actions to vacate arbitral awards. I concur with the majority that the *DelCostello* rule is appropriately accorded retroactive application to the Ohio case.

these actions would be time barred. The retroactive application of this newly declared doctrine would arbitrarily ignore the appellants' justifiable reliance upon clear and established law and work a substantial injury to their rights; therefore, considerations of justice and equity mandate prospective application of *DelCostello* as to these plaintiffs. *Chevron Oil Co. v. Huson*, 404 U.S. at 106, 92 S.Ct. at 355. *See generally Hanover Shoe, Inc. v. United Shoe Machinery Corp.*, 392 U.S. at 496, 88 S.Ct. at 2233.

Furthermore, the majority's result runs counter to *DelCostello's* teachings that employees are often unsophisticated in legal affairs and judicially crafted rules of law must be cognizant of that deficiency. In *DelCostello,* the Supreme Court denounced the ninety-day filing deadline because it required a rank and file worker to conduct a moderately sophisticated legal analysis. 462 U.S. at 166, 103 S.Ct. at 2291 ("the employee ... is called upon ... to evaluate the adequacy of the union's representation, to retain counsel, to investigate substantial matters ..., and to frame his suit"); today's majority holding in effect penalizes rank and file employees for failing to conjecture upon Justice Stewart's remarks in his concurring opinion in *Mitchell,* and for adhering to the legal precedent settled and reaffirmed by this court in *Echols v. Chrysler Corp.*, 633 F.2d 722 (6th Cir. 1980); *Smart v. Ellis Trucking Co.*, 580 F.2d 215 (6th Cir.1978), *cert. denied*, 440 U.S. 958, 99 S.Ct. 1497, 59 L.Ed.2d 770 (1979); and, *Gray v. International Association of Heat & Frost Insulators*, 416 F.2d 313 (6th Cir.1969). If, under *DelCostello,* it is inequitable to require an employee to conduct immediately an analysis of existing law to determine whether the employee has a legitimate cause of action, it is absurd to demand that the same employee be capable of predicting with certainty that the Supreme Court would at some indefinite time in the future suddenly reverse itself and adopt a view previously espoused by only one member of the Court.

*Chevron* also dictates a review of "the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation". 404 U.S. at 106–07, 92 S.Ct. at 355. *DelCostello* adopted the § 10(b) rule because it was an available statutory period congressionally designed to accommodate the competing interests of the employee's right to obtain relief from an unjust, collusive, and illegal disposition of a labor grievance, and the relatively rapid resolution of such disputes favored by federal labor law. 462 U.S. at 168–69, 103 S.Ct. at 2292–93. The obvious purpose of the *DelCostello* Court's adoption of § 10(b) was to permit a greater opportunity for the vindication of employee rights by *increasing* the time during which an employee could file a *Vaca/Hines* suit. In most jurisdictions, following *Mitchell's* directive an employee had a maximum of only three months in which to initiate an action (only two states had longer statutory periods, eleven state statutes incorporated periods no greater than thirty days). 462 U.S. at 166 n. 15, 103 S.Ct. at 2291 n. 15. As previously noted, the Court discerned application of such a short period lacked a credible basis in reality because

> the employee will often be unsophisticated in collective bargaining matters ... [and] is called upon, within the limitations period, to evaluate the adequacy of the union's representation, to retain counsel, to investigate substantial matters that were not at issue in the arbitration proceeding, and to frame his suit.

462 U.S. at 166, 103 S.Ct. at 2291. The period was therefore increased to six months (for most states this was at least double the time that *Mitchell* had required) in order "to provide an aggrieved employee with a satisfactory opportunity to vindicate his rights under § 301 and the fair representation doctrine". 462 U.S. at 166, 103 S.Ct. at 2291.

It is obvious that the prospective application of *DelCostello* will not retard or undermine the policies which formed the Court's decision in that case. As this court stated in *Pitts v. Frito-Lay, Inc.*, 700 F.2d 330, 334 (6th Cir.1983), *reh'g and reh'g en*

*banc denied,* (reviewing the decision in *Badon v. General Motors Corp.,* 679 F.2d 93 (6th Cir.1982)), "[c]ertainly, retroactive application would promote the finality of private labor settlements by immediately insulating from attack any resolution concluded for a period of six months. However this finality is achieved at the expense of the employee's justifiable belief that his ability to undo iniquitous settlements" was governed by a settled law establishing a longer period.

The final element of the *Chevron* analysis necessitates an examination of "the inequity imposed by retroactive application". Retroactive application in the cases at bar would be extremely unjust since the appellants complied with this court's then current pronouncements of the law and appellants could not have been expected to predict that within the indefinite future the Supreme Court would impose another, more restrictive limitation. *Cf. Pitts v. Frito-Lay, Inc., supra.* It is significant that the *Chevron* Court's enunciation of this final analysis invoked a broader evaluation of the circumstances to be reviewed under *Chevron's* rule. In *Chevron,* the Supreme Court cited *Cipriano v. City of Houma,* 395 U.S. 701, 89 S.Ct. 1897, 23 L.Ed.2d 647 (1969) (per curiam) as the paradigmatic application of the principle that "[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the 'injustice or hardship' by a holding of nonretroactivity". *Cipriano v. City of Houma,* 395 U.S. at 706, 89 S.Ct. at 1900, *cited in Chevron Oil Co. v. Huson,* 404 U.S. at 107, 92 S.Ct. at 355.

In *Cipriano,* the Supreme Court concluded that the provisions of Louisiana law which gave only property owners the right to vote in elections to approve a municipal issue of securities were unconstitutional as a denial of equal protection. As a result, aggrieved parties were permitted to challenge the results of such "property owner" elections. The Court recognized, however, that the cities and their bondholders would, by virtue of the change in the effective law, be subjected to "significant hardships" and possible loss of their putatively legitimately acquired interests. The Court therefore determined not to apply *Cipriano* retroactively in all cases:

> Therefore, we will apply our decision in this case prospectively. That is, we will apply it only where, under state law, the time for challenging the election result has not expired, or in cases brought within the time specified by state law for challenging the election and which are not yet final. Thus, the decision will not apply where the authorization to issue the securities is legally complete on the date of this decision. Of course, our decision will not affect the validity of securities which have been sold or issued prior to this decision and pursuant to such final authorization.

395 U.S. at 706, 89 S.Ct. at 1901. The proper balance was struck by protecting the rights of citizens who had filed timely complaints under state law, while insulating from attack those securities issued under the old rules and not challenged in a timely fashion.

I would, similarly, seek to avoid the injustice and hardship suffered by the instant appellants. The majority apparently forgets, or ignores, the uniqueness of the circumstances confronted by this circuit with respect to Michigan and Kentucky law; while in nearly all other jurisdictions in the nation *DelCostello* expanded the time for the initiation of *Vaca/Hines* lawsuits, in these two states the Court has substantially reduced that time period. In view of that unique situation, and the mandate of *Chevron* which commands a review of the circumstances of *each* case, I would require that in *Vaca/Hines* lawsuits filed in a timely fashion pursuant to the state law in effect prior to *DelCostello,* the § 10(b) bar would not be applied. Any unfiled § 301/fair representation cause of action which accrued as of or after *DelCostello* would, of course, be subject to the § 10(b) limitation therein announced. *Accord Barina v. Gulf Trading & Transportation Co.,* 726 F.2d 560, 563, 564 n. 8 (9th Cir.

1984) ("*DelCostello* establishes a new principle of law because it imposes a limitation on the employee that is eight times shorter than the limitation that applied when his claim arose. \* \* \* The inequity of retroactive application of *DelCostello* is greatly diminished, of course, if the six-month limitation of *DelCostello* is applied to ... lengthen the limitation period"); *Edwards v. Teamsters*, 719 F.2d 1036 (9th Cir.1983), *cert. denied,* ___ U.S. ___, 104 S.Ct. 1599, 80 L.Ed.2d 130 (1984); *McNaughton v. Dillingham Corp.*, 707 F.2d 1042 (9th Cir.1983), *reh'g denied,* 722 F.2d 1459 (9th Cir.1984), *cert. denied,* ___ U.S. ___, 105 S.Ct. 291, 83 L.Ed.2d 227 (1984).

Consistent with the foregoing, I would hold *DelCostello* retroactive with respect to Case No. 83–3414 only (see n. 4 *supra*), and prospective in Case Nos. 82–1822 and 82–5676. Accordingly, I would reverse and remand all three appeals to permit these employees an opportunity to vindicate the important federal rights endowed by § 301 and the doctrine of fair representation.

WELLFORD, Circuit Judge, dissenting.

I concur in Judge Krupansky's dissent in this case and add only these brief additional comments.

Whether *DelCostello v. Int'l Brotherhood of Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), should be retroactively applied has proven to be a troublesome issue for our court. As noted in footnote 7 of Judge Martin's majority opinion, panels of our court have taken opposite views. *See also Pitts v. Frito-Lay, Inc.*, 700 F.2d 330 (6th Cir.1983), and *Curtis v. Int'l Brotherhood of Teamsters*, 716 F.2d 360 (6th Cir.1983). Because I am persuaded that the rationale of *Pitts*, is the sounder approach, even though it was decided prior to *DelCostello*,[1] I respectfully dissent.

Other courts also have disagreed about the retroactive application of *DelCostello*. In *Edwards v. Teamsters Local Union*

*# 36*, 719 F.2d 1036 (9th Cir.1983), *cert. denied,* ___ U.S. ___, 104 S.Ct. 1599, 80 L.Ed.2d 130 (1984), and in *Barina v. Gulf Trading & Transp. Co.*, 726 F.2d 560 (9th Cir.1984), the Ninth Circuit declined to hold *DelCostello* retroactive after a *Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), analysis. (See also footnote 6 to Judge Martin's opinion acknowledging that some courts which have held the six months limitation to apply retroactively have decided the issue very narrowly and/or only in situations where this *enhanced* employees access to the courts.)

I agree with the decision in *Barina*, 726 F.2d at 564, (citing *Pitts*), that *DelCostello* was a deviation and departure from the prior direction set out by the Supreme Court in *UAW v. Hoosier Cardinal Corp.*, 383 U.S. 696, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966) (applicable limitations period should be determined with reference to state law).

Further, after consideration of all the briefs and arguments in these cases, I agree with the rationale in *Edwards* that retroactive application in these cases now before us would be arbitrary and "inherently unfair." 719 F.2d at 1040. The kind of result reached in these cases was described by Judge Krupansky in *Pitts* as "extremely unjust" by cutting off (or adding to) a time limitation based upon principles of state laws upon which the parties had a right to rely. *DelCostello* should therefore apply prospectively only.

---

1. Judge Martin is correct, however, in characterizing our *Badon v. General Motors Corp.*, 679 F.2d 93 (6th Cir.1982), case as one which essentially presaged the holding in *DelCostello*. *Pitts* refused to apply *Badon's* six months statute retroactively.